UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PLAZA HOME MORTGAGE, INC.,<br><br>                              Plaintiff,<br><br>-against-<br><br>ASSOCIATION OF CERTIFIED<br>MORTGAGE ORIGINATORS RISK<br>RETENTION GROUP, INC., CASTLELINE<br>RISK & INSURANCE SERVICES, LLC,<br>ALITSOURCE PORTFOLIO SOLUTIONS,<br>INC.,<br><br>                              Defendants. | 24-CV-2191-LTS-JW |

<u>MEMORANDUM ORDER</u>

Plaza Home Mortgage, Inc. ("Plaintiff" or "Plaza") brings this action for monetary and equitable relief against Association of Certified Mortgage Originations Risk Retention Groups, Inc. ("ACMO"[1]), CastleLine Risk & Insurance Services, LLC ("CastleLine"), and Altisource Portfolio Solutions, Inc. ("APSI") (collectively, "Defendants") asserting various causes of action for breach of contract and declaratory relief (against ACMO), tortious interference with contract (against CastleLine and APSI), and breach of the implied covenant of good faith and fair dealing and deceptive business practices in violation of New York General Business Law ("N.Y. G.B.L.") section 349 (against all Defendants). (Docket entry no. 1 (the "Complaint" or "Compl.").) The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. section 1332.

Before the Court is Defendants' motion to dismiss the Complaint for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of

---

[1]      Plaintiff refers to ACMO as "RRG" in the Complaint.

Civil Procedure. (Docket entry no. 22 (the "Motion to Dismiss").) In the alternative, Defendants

ask the Court to sever the implied covenant claims, pursuant to Rule 21 of the Federal Rules of

Civil Procedure, and to stay discovery pending adjudication of Plaintiff's breach of contract

claim. The Court has considered the parties' submissions carefully and, for the following

reasons, grants the Motion to Dismiss in its entirety. The Court denies Defendants' request to

sever as moot.

BACKGROUND

Unless otherwise noted, the following summary is drawn from the Complaint, all

well-pleaded allegations of which are presumed true for the purposes of this motion practice.[2]

Plaza is a third-party wholesale and correspondent mortgage lender that originates

and purchases mortgage loans, and then sells such loans to investors like Frannie Mae.

(Compl. ¶ 2.) All Defendants are corporate affiliates and subsidiaries of a common parent non-

party, Altisource Portfolio Solutions S.A. (Id. ¶ 5.) ACMO is a Risk Retention Group that

provides loan insurance coverage under various Certified Loan Insurance policies. (Compl. ¶ 1.)

CastleLine issued the Certified Loan Insurance policies at issue in this action on behalf of

ACMO and handles claim processing. (Id. ¶ 5.) APSI is the sole owner and managing member

of CastleLine. (Id.)

In order to purchase ACMO's insurance policies, Plaza was required under federal

law to become a member of the Risk Retention Group. See 15 U.S.C. § 3901(a)(4)(E)(i); (see

also docket entry no. 22-1 ("Def. Mem.") at 8.) Plaza therefore executed a Membership

---

[2]     The Court has also considered factual matter drawn from documents that are integral to,
        attached to, or incorporated by reference in the Complaint. See DeLuca v. AccessIT Grp.,
        Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) ("[E]xtrinsic documents may be considered
        as part of the pleadings if they are (1) attached to the complaint; (2) incorporated into the
        complaint by reference; or (3) integral to the complaint.").

Subscription Agreement with ACMO's parent company that contained a limitation of liability

provision at Section 4.2 ("Limitation of Liability provision") stating:

> **4.2. Limitation on Liability**. The Member [Plaza] agrees that <u>none
> of the Association, ACMO, CastleLine RE, CastleLine Holdings
> LLC, CastleLine Risk and Insurance Services, LLC or any of their
> respective successors, assigns, affiliates, officers, directors, [or]
> managers, . . . shall have any liability to the Member</u> [Plaza], its
> security holders or creditors or their successors or assigns, or any
> person asserting claims on behalf of or in the right of the Member
> [Plaza] (whether direct or indirect, in contract, tort, for an act of
> negligence or otherwise) for any losses, fees, damages, liabilities,
> costs, expenses, or equitable relief arising out of or relating to the
> Certified Loan Underwriting or the services to be rendered by any
> person or entity pursuant to the Certified Loan Underwriting, <u>except
> for the liability of ACMO to pay Losses and Claims Expenses</u> (each
> as defined in a Certified Loan Policy issued to the Member [Plaza])
> <u>in accordance with the terms of such Certified Loan Policy</u>.

(Docket entry no. 22-3 ("Membership Subscription Agreement" or "MSA") at 5 (emphasis

added).)

Since "at least" 2016, Plaza has purchased loan insurance coverage from ACMO,

including one policy for the period November 1, 2020 to October 31, 2021 (Policy Number

CL00020A0027) and one for the period November 1, 2021 to April 30, 2023 (Policy Number

CL0021A0027) (together, "the Policies"), covering certain claims arising from loan underwriting

defects.  (Id. ¶¶ 1,4, 25.)  The Policies provide a "per Mortgage Loan limit of liability of '25% of

the Original Principal Balance of any Mortgage Loan up to a maximum of $125,000' and a

$6,000,000 aggregate limit of liability."  (Id. ¶ 27 (quoting the Policies).) [3]  The Policies' insuring

agreement states:

---

[3]    Where the Court quotes the Policies and cites to the Complaint, the Court reproduces,
      including all alterations and omissions, the language of the Policies as quoted in the
      Complaint.

> We [ACMO] agree to indemnify the Insured for Foreclosure Loss, Scratch and Dent Loss and Short Sale Loss because of a Claim that is directly caused by a Mortgage Underwriting Defect, provided that:
> 1.1. the Mortgage Underwriting Defect is committed during the Policy Period, and
> 1.2. the Mortgage Underwriting Defect is on a Mortgage Loan that has undergone Certified Loan Underwriting during the Policy Period, and
> 1.3. the Mortgage Loan is listed on the Schedule of Mortgage Loans, and
> 1.4. the Claim was made against an Insured and reported in writing during the Reporting Window to the party identified in Item 13 of the Declarations, and
> 1.5. the Named Insured [Plaza] is a Member of the Association of Certified Originators, Inc.

(Id. ¶ 29.)

In Section 2.6, the Policies define a "Claim" as either "a written Repurchase Demand on a Mortgage Loan subject to this Policy; or . . . discovery by the Insured of an Unsaleable Loan."  (Id. ¶ 35 (ellipsis in Compl.); see also docket entry no. 22-5 ("Policy Number CL00020A0027" or "Policy 20") at 4; docket entry no. 22-6 ("Policy Number CL00021A0027" or "Policy 21") at 4.)  In Section 2.16, the Policies define "Loss" as "a Foreclosure Loss, Scratch and Dent Loss, or Short Sale Loss."  (Compl. ¶ 32; see also Policy 20 at 5; Policy 21 at 5.)  In Sections 2.33 and 2.34, "Scratch and Dent Loss" is defined, in relevant part, as:

> [T]he lesser of the sum shown as the Per Loan Limit of Liability [of 25% of the Original Principal Balance of any Mortgage Loan up to a maximum of $125,000] and the deficit associated with the Mortgage Loan following a Scratch and Dent Loan Sale by You [Plaza], calculated as the monetary difference between . . . the unpaid principal balance; and . . . any amounts recovered through a Scratch and Dent Loan Sale.

(Compl. ¶ 33; see also Policy 20 at 8; Policy 21 at 8.)

In Section 4.3, the Policies also describe certain conditions as "conditions precedent which must be satisfied before We [ACMO] are liable to make any payment under this Policy."  (Compl. ¶ 44.)  For example, should a Loss occur, the Policies require Plaza to take certain actions before ACMO can be liable.  Section 4.3.5 provides, in relevant part:

> Insureds shall do nothing after a Claim has been made or an Insured
> becomes aware of a Repurchase Demand or Unsaleable Loan or
> circumstance that an Insured knows or reasonably should know will likely
> give rise to a claim under this Policy, to admit any liability, or to prejudice
> such rights or causes of action to which We [ACMO] may become
> subrogated upon payment of any loss hereunder.

(Id. ¶ 45), and Section 4.3.6 states that, "[a]s soon as practicable, the Insured shall

provide proof of Loss by providing the details set out in Appendix 2 to the party listed in

Item 13 of the Declarations."  (Id. ¶ 46.)  The "Other Insurance or Indemnity" provision

of Section 4.24 provides that, in the event of a loss, the Policies "shall be excess to" other

insurance or indemnity that covers the loss in whole or in part.  The "Voluntary Payments

and Settlements" provision of Section 4.26 states:

> [i]t is a condition precedent of coverage that Our prior written consent be
> obtained for payment or settlement of any Claim.  No Insured may incur
> any expense, make any payments, enter into any settlements, assume any
> obligation or waive any right of recovery or limitation of loss with respect
> to a Claim without Our prior written consent.

(Id. ¶ 48.)  Finally, the Policies include a non-waiver provision in Section 4.27 stating:

> No waiver of performance or obligation of any party to this Policy shall be
> binding unless in writing signed by the party waiving such performance or
> obligation.  No waiver shall constitute a continuous waiver or waiver of
> future performance or obligation unless specifically provided for in the
> written waiver by the waiving party.

(Id. ¶ 49.)

Since 2016, Plaza and CastleLine have handled claims or potential claims under

the Policies according to the following procedure.  Whenever Plaza received a notice of defect or

Repurchase Demand regarding a loan it had sold, Plaza would input that information into a

spreadsheet of actual or potential claims (the "Claims Summary Spreadsheet").  (Id. ¶¶ 51, 53.)

Every two weeks, Plaza and CastleLine would hold a call to discuss the claims, and Plaza would

send an updated version of the Claims Summary Spreadsheet that morning.  (Id. ¶¶ 55-56.)  After

a mortgage was repurchased through a Scratch and Dent Sale, Plaza would formally file a proof of Loss.  (Id. ¶ 57.)  Between 2016 and 2023, CastleLine (on behalf of ACMO) provided coverage to Plaza for about 63 claims that were submitted pursuant to these procedures. (Id. ¶ 59.)

        Beginning in 2020, Plaza underwrote and then sold to investors the 21 mortgages at issue in this action (the "Mortgages").  (Id. ¶ 9.)  Following these sales and upon discovery of a defect, such as an underwriting error, Plaza repurchased each of the Mortgages.  (Id. ¶¶ 10, 60.) Plaza then resold the Mortgages at a discount and sought to recoup the losses through its active Certified Mortgage Insurance, submitting each claim to CastleLine according to the above procedures.  (Id. ¶¶ 11-12.)  Plaza added the claims to the Claim Summary Spreadsheet but, on October 16, 2023, and October 17, 2023, CastleLine sent Plaza 21 nearly identical letters denying coverage for each of the claims and for multiple claims that Plaza "had not yet even submitted for coverage."  (Id. ¶¶ 61, 62, 64.)  CastleLine based these denials on the argument that Plaza's "claims handling process apparently violated several conditions of the Policies" because Plaza paid repurchase demands without CastleLine's prior written consent, did not give CastleLine an opportunity to investigate the claims, failed to provide proof of Loss, and did not provide evidence of its efforts to enforce its insurance and indemnification rights.  (Id. ¶¶ 14, 65.) CastleLine reaffirmed this position through a subsequent letter sent on February 2, 2024. (Id. ¶ 68.)

        Plaza alleges that Defendants denied the Claims even though Defendants were aware that the process utilized was consistent with the years-long prior course of conduct between the parties for submitting claims for coverage.  (Id. ¶ 15.)  Plaza alleges that it provided all necessary information within a reasonable timeframe for CastleLine to review and pay the

Claims and was willing to do so for the Claims that had not yet been presented for coverage (id. ¶ 70), and that it either "complied with all obligations under the Policies, or the obligations under the Policies had been waived" pursuant to the parties' years-long course of conduct (id. ¶ 76).

DISCUSSION

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). This requirement is satisfied when the factual content of the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). A complaint that contains only "naked assertions" or a "formulaic recitation of the elements of the cause of action" cannot suffice. Twombly, 550 U.S. at 555. "In deciding a Rule 12(b)(6) motion, a court assumes the truth of the facts asserted in the complaint and draws all reasonable inferences in favor of the plaintiff." Sara Designs, Inc. v. A Classic Time Watch Co. Inc., 234 F. Supp. 3d 548, 554 (S.D.N.Y. 2017) (citing Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009)).

The Limitation of Liability Provision

As noted above, when Plaintiff joined the Risk Retention Group to purchase ACMO's Certified Loan Insurance Policies, it executed a Membership Subscription Agreement that contained a Limitation of Liability provision reading:

> The Member [Plaza] agrees that none of the Association, ACMO, CastleLine RE, CastleLine Holdings LLC, CastleLine Risk and Insurance Services, LLC or any of their respective successors, assigns, affiliates, officers, directors, [or] managers … shall have any liability to the Member [Plaza] . . . except for the liability of ACMO to pay Losses and Claims Expenses (each as defined in a Certified Loan Policy issued to the

Member [Plaza]) in accordance with the terms of such Certified Loan
Policy.

(MSA at 5.)  The Agreement also included a choice of law provision dictating that the laws of the

State of New York would govern.  (Id. at 6 (Section 5.5).)

Defendants argue that, under the unambiguous terms of the Limitation of Liability

provision, Plaza expressly waived (1) all claims in contract and tort against APSI (as an affiliate)

and CastleLine, and (2) all claims against ACMO except liability to pay for losses and expenses

covered by the Policies, and that the Court should therefore dismiss all claims other than Plaza's

breach of contract claim against ACMO.  (Def. Mem. at 8-9.)  Plaintiff argues for a broader

reading of the carve-out clause of the provision, asserting that the exception applies to all

liability "arising out of the liability of ACMO to pay losses under the Policies at issue."  (Pl.

Mem. at 10 (emphasis added).)  In the alternative, Plaintiff argues that, even if the terms of the

provision were narrowly construed, limitation of liability provisions are unenforceable where

"the misconduct for which it would grant immunity smacks of intentional wrongdoing."  (Id. at

11 (citing Electron Trading, LLC v. Morgan Stanley & Co. LLC, 69 N.Y.S.3d 633, 635 (App.

Div., 1st Dep't 2018)).)

Plaintiff's broad reading of the Limitation of Liability provision cannot withstand

scrutiny.  The clear and unambiguous terms of the general portion of Section 4.2 provide that

Plaza waives liability for any claim "in contract, tort, for an act of negligence or otherwise"

against the group of entities that includes CastleLine and APSI.  (MSA at 5.)  The provision then

delineates a singular carveout for "liability of ACMO to pay Losses and Claims expenses . . . in

accordance with the terms of such Certified Loan Policy."  (MSA at 5 (emphasis added).)  Plaza

attempts to read additional terms into the carveout provision that are simply not present in the

plain language of the document.  Where "a written agreement [] is complete, clear and

unambiguous on its face, [it] must be enforced according to the plain meaning of its terms." Vermont Teddy Bear Co. v. 538 Madison Realty Co., 1 N.Y.3d 470, 475 (2004).

Plaza argues that the additional, extracontractual, claims in this action fall within the carveout provision because they are claims "arising out of the liability of ACMO to pay losses under the Policies at issue" and that the affiliated entities "will have no liability to Plaza, except for liability in the event that ACMO fails to pay Losses." (Pl. Mem. at 10 (emphasis added).) Plaza's assertion misstates the carveout provision in an attempt to create ambiguity by adding language that is not in the written agreement. But "[c]ourts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." Consedine v. Portville Cent. Sch. Dist., 12 N.Y.3d 286, 293 (2009). For these reasons, the Court finds that the clear terms of Section 4.2 of the MSA, the Limitation of Liability provision, as entered into by two highly sophisticated parties,[4] preclude all of the claims asserted in this action except for claims against ACMO for payment of Losses and Claim Expenses in accordance with the Policies.

Plaza next argues that the Court should find the Limitation of Liability provision unenforceable with respect to Plaza's claims against Defendants for breach of the implied covenant of good faith and fair dealing. (Pl. Mem. at 11.) It is true that a limitation of liability provision is "unenforceable when, '[i]n contravention of accepted notions of morality, [the] misconduct for which it would grant immunity. . . is fraudulent, malicious, or prompted by the sinister intention of one acting in bad faith.'" Electron Trading, 69 N.Y.S.3d at 635 (quoting

---

[4]    Plaza seems to assert that the Court should construe any ambiguities in the contract in Plaza's favor because Defendants were the drafters of the contract. (Pl. Mem. at 10-11 (citing Kerin v. U.S. Postal Serv., 116 F.3d 998, 992 (2d Cir. 1997)).) Because the Court finds no ambiguity in the plain terms of the contract, the Court need not address that argument.

Kalisch-Jarcho, Inc. v. City of New York, 58 N.Y.2d 377, 384-85 (1983)).  None of the factual allegations in the Complaint, however, plausibly supports an inference that any of the Defendants engaged in any conduct that was "fraudulent, malicious, or prompted by sinister intention."  VL8 Pool, Inc. v. Glencore Ltd., No. 20-CV-2053-ALC, 2021 WL 6113981, at *3 (S.D.N.Y. Dec. 27, 2021).  The "type of intentional wrongdoing that could render a limitation in [a contract] unenforceable is that which is unrelated to any legitimate economic self-interest."  Electron Trading, 69 N.Y.S.3d at 636 (internal quotations and citations omitted).  Iindeed, Plaintiff concedes that Defendants' alleged conduct "may be related to one or more of their economic self-interest," but argues that "discovery is needed to determine exactly what those motivations are."  (Pl. Mem. at 11 n.5.)  Plaintiff misperceives its pleading burden; while Plaza is not expected to "prove its case" at the pleading stage, it must allege sufficient facts to make the alleged misconduct "plausible," not merely possible.  See Trump v. Vance, 480 F. Supp. 3d 460, 494 (S.D.N.Y. 2020) (citing Iqbal, 556 U.S. at 678-79).  Bare conclusory assertions do not suffice to plead plausibly that Defendants' denial of the Claims was motivated by fraudulent, malicious, or sinister intentions.

Therefore, the Court finds that the Complaint fails to allege a sufficient factual basis to invalidate the Limitation of Liability provision as it applies to Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing against all Defendants other than ACMO.[5]

---

[5]    Because the Court finds that Plaintiff failed to plead intentional misconduct sufficient to invalidate the exculpatory provision, it need not address at this time the merits of Defendants' arguments that Plaintiff's implied covenant claim against ACMO is duplicative of Plaintiff's breach of contract claim and that Plaintiff cannot assert a claim for breach of the implied covenant against APSI or CastleLine, neither of which is a party to the contract.

Defendants' motion to dismiss Count III is granted.  Defendants' motion in the alternative to sever Count III is denied as moot.

      For the same reasons, Plaintiff's extracontractual claims against Defendants for deceptive business practices in violation of N.Y. G.B.L. section 349 (Count IV) and for tortious interference with contract (Count V) are precluded by the Limitation of Liability provision and are dismissed.

Breach of Contract Claim

      Count I asserts that ACMO breached its contractual obligations under the Policies by failing to provide coverage.  Each of the Policies included a choice of law provision dictating that New York law would govern.  (Compl. ¶ 50; see also docket entry no. 22-5 ("Policy CL00020A0027") at 2; docket entry no. 22-6 ("Policy CL00021A0027") at 2.)  Under New York law, a party asserting a breach of contract claim must plead the following elements: "(1) the existence of a contract; (2) performance by the party seeking recovery; (3) non-performance by the other party; and (4) damages attributable to the breach."  Intercept Pharm. v. Howard, 615 F. App'x  42, 43 (2d Cir. 2015) (citation omitted).  Plaintiff asserts that it has a viable breach of contract claim against ACMO because (1) the Policies constituted valid and enforceable contracts between Plaza and ACMO, (2) "Plaza has complied with all obligations under the Policies, or the obligations under the Policies have been waived, pursuant to the parties' years-long course of conduct," (3) ACMO breached the contract by failing to pay Plaza "any amounts in connection with any of the Claims," and (4) Plaza suffered damages as a result.  (Compl. ¶¶ 75-80.)

      The Complaint alleges that CastleLine breached the contract in denying Plaza's Claims based on contentions that (1) "Plaza [paid] the repurchase demand without CastleLine's

'prior written consent' and without giving [Castleline] an opportunity to 'investigate the Claim or take action with respect to the Claim' in violation of Sections 4.26 and 4.3.5 of the Policies, (2) Plaza did not provide proof of Loss in violation of Section 4.3.6, and (3) Plaza did not provide any evidence of its efforts to enforce its insurance and indemnification rights against other carriers and indemnitors, in violation of Section 4.24.  (Id. ¶ 65 (quoting CastleLine's October 2023 letters.)

Defendants move to dismiss Plaza's breach of contract claim against ACMO, arguing that Plaintiff failed to plead facts sufficient to support an inference that Plaza actually performed its obligations under the contract, an essential element of its claim.  Defendants argue that the non-waiver provision of the Policies, which states that no waiver has effect with respect to future claims unless it is made in writing,[6] prevents Plaintiff from alleging based solely on the parties' prior course of conduct that ACMO waived the condition precedent provisions, and thus Plaintiff performed its obligations under the Policies even though it failed to meet the conditions precedent.  (Def. Mem. at 5-7; docket entry no. 33 ("Def. Reply") at 8.)

Despite Plaintiff's contentions (Pl. Mem. at 6), Plaza has failed to provide well-plead allegations sufficient to support the inference that Plaza complied with the written terms of the Policies.  In arguing in support of its assertion, Plaintiff quotes from two paragraphs of the Complaint, pointing to the Complaint's assertions that "[a]ll Claims for which Plaza has sought or will seek coverage satisfy the Policies' insuring agreement, the conditions that CastleLine argues have been breached have either been satisfied or waived, and the non-waiver provision

---

[6]    The provision, in full, provides:  "No waiver of performance or obligation of any party to this Policy shall be binding unless in writing signed by the party waiving such performance or obligation.  No waiver shall constitute a continuous waiver or waiver of future performance or obligation unless specifically provided for in the written waiver by the waiving party."  (Compl. ¶ 49.)

does not apply to change that outcome," and "Plaza has complied with all obligations under the Policies, or the obligations under the Policies have been waived, pursuant to the parties' years-long course of conduct."  (Compl. ¶¶ 70, 76 (emphasis added).)  These conclusory assertions go to points of law and are unsupported by the facts alleged in the Complaint, which demonstrate that Plaintiff failed to act in compliance with the written provisions of the Policies, in particular the conditions precedent, and that the policy's Limitation of Liability and non-waiver provisions unambiguously negate Plaintiff's claims insofar as they are premised on waiver through course of conduct.  See Udell v. Berkshire Life Ins. Co. of Am., No. 03-CV-2721-SJF, 2005 WL 1243497, at *5 (E.D.N.Y. May 25, 2005) (dismissing plaintiff's breach of contract claim, finding "although a general averment of performance of a condition precedent is sufficient to withstand a motion to dismiss, plaintiff does not even generally allege performance of his . . . obligations under the [contract]").

Plaintiff does not allege that the parties signed a waiver agreement, much less even identify any such agreement.  (See generally Pl. Mem.)  Instead, Plaintiff argues that, "even where a contract specifically contains a nonwaiver clause and a provision stating that it cannot be modified except by a writing, it can, nevertheless, be effectively modified by actual performance and the parties' course of conduct."  (Id. at 8 (citing Match Grp., LLC v. Beazley Underwriting Ltd., No. 22-CV-4629-LGS, 2023 WL 3647370 (S.D.N.Y. May 25, 2023), rev'd on other grounds 2024 WL 3770709 (2d Cir. Aug. 13, 2024)).)  As Defendants argue, however, the cited alternative holding in Match Group relied on facts quite different from those presented here, including allegations of specific oral discussions of modifications to the agreement and explicit agreement to the modifications in connection with contract renewals.  Match Group, 2023 WL 3647370, at *6.  No such discussions have been alleged here.

Where "a written agreement [] is complete, clear and unambiguous on its face, [it] must be enforced according to the plain meaning of its terms." Vermont Teddy Bear Co. v. 538 Madison Realty Co., 1 N.Y.3d 470, 475 (2004). The Court therefore finds, as a matter of law, that the clear terms of the waiver provision preclude Plaza's waiver arguments and that Plaza fails to plausibly allege both its own compliant performance under the contract and any waiver validating noncompliant performance. For the foregoing reasons, Defendants' Motion to Dismiss Count I is granted.

Declaratory Judgment Claim

Count II of the Complaint asserts a claim for a declaratory judgment that "there is coverage available for Plaza's Claims under the Policies." As explained above, Plaza has failed to allege facts supporting plausibly its allegation that ACMO has breached its contractual obligation to provide coverage and, therefore, has failed to plead a declaratory judgment claim upon which relief may be granted. Count II is, accordingly, dismissed.[7]

LEAVE TO FILE A MOTION TO AMEND

"'Leave to amend, though liberally granted, may properly be denied' for 'repeated failure to cure deficiencies by amendments previously allowed' or 'futility of amendment,' among other reasons." Bischoff v. Albertsons Cos., No. 22-CV-4961-CS, 2003 WL 4187494, at *7 (S.D.N.Y. June 26, 2023) (quoting Ruotolo v. City of N.Y., 514 F.3d 184, 191 (2d Cir. 2008)). There is a particularly strong preference, however, for allowing amendment when "the plaintiff has not had the benefit of a court ruling with respect to the deficiencies of its pleading." Allianz

---

[7]    Because the Court finds Plaza has insufficiently pleaded a basis for its declaratory judgment claim, the Court need not address Defendants' arguments that Count II is duplicative of the breach of contract claim asserted in Count I. (Def. Mem. at 9.)

Glob. Invs. GmbH v. Bank of Am. Corp., 473 F. Supp. 3d 361, 365 (S.D.N.Y. 2020); see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC, 797 F.3d 160, 190 (2d Cir. 2015) ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies."). Because of the Limitation of Liability provision, the deficiencies in Plaintiff's N.Y. G.B.L. and tortious interference with contract claims (Counts IV and V) cannot be cured through amendment, and those claims must be dismissed with prejudice. Given the possibility, however, that the factual deficiencies in Plaintiff's breach of contract, declaratory judgment, and implied covenant claims against ACMO (Counts I, II, and III) can be cured through amendment, in the interests of justice, Plaintiff is granted leave to file a motion for leave to amend those claims. Any such motion must comply with all applicable federal and local rules, including Local Civil Rule 15.1. Should Plaintiff fail to file such a motion **within 21 days** of the entry of this Memorandum Order, all of Plaintiff's claims will be dismissed with prejudice and without further advance notice.

<u>Conclusion</u>

For the foregoing reasons, Defendants' Motion to Dismiss the Complaint is granted in its entirety. Counts IV and V are dismissed with prejudice, as are all other claims as against Defendants other than ACMO. Defendants' motion to sever the implied covenant claims under Federal Rule of Civil Procedure 20 is denied as moot. Plaintiff is granted leave to file a motion for leave to amend the claims asserted against ACMO in Counts I, II, and III. If Plaintiff fails to make a motion for leave to amend its claims **within 21 days** of the entry of this

Memorandum Order, this case will be dismissed with prejudice and without further notice.  This

Memorandum Order resolves docket entry no. 22.


       SO ORDERED.

Dated: New York, New York
       November 6, 2025

                  /s/ Laura Taylor Swain
                 LAURA TAYLOR SWAIN
                 Chief United States District Judge